HOOPER, Chief Justice
(dissenting).
On June 29, 1994, the respondent, Thomas McIntyre, filed a three-count complaint against Dr. Kenneth D. McLeod and his wife Jackie 0. McLeod, in the Lee County Circuit Court, alleging fraud. On February 23,1995, the trial court granted the McLeods’ motion for summary judgment. On November 3, 1995, the Court of Civil Appeals reversed the judgment of the trial court. McIntyre v. McLeod, 678 So.2d 1105 (Ala.Civ.App.1995).
In late 1992, the McLeods entered into an oral “cost-plus” contract with McIntyre for the renovation of a rental house owned by the McLeods on Lakeview Drive in Auburn. The McLeods claim they understood that McIntyre would receive between $6,000 and $8,000 for his work, depending upon the pre-work condition of the Lakeview house. The McLeods claim they were told by McIntyre that this estimate covered all of the work done on the house.
On April 1, 1993, Dr. McLeod received a telephone call from McIntyre, who requested payment in the amount of $8,000. Dr. McLeod sent that amount to McIntyre and asked for an accounting of the materials and labor used on the job. The McLeods asked several times for an accounting, but never received one. Dr. McLeod received another call from McIntyre around the first of August 1993, wherein he requested an additional payment of $5,500, which Dr. McLeod paid.
On December 17, 1993, McIntyre submitted an invoice to the’ McLeods, seeking payment in the amount of $20,000. On January 7, 1994, McIntyre submitted his final “invoice” for $20,663.68 to the McLeods, togeth *1109 er with a separate bill for $2,311.50. The McLeods refused to pay these bills.
The Court of Civil Appeals reversed the summary judgment, on the basis of an affidavit of Michael Givens. The Court of Civil Appeals said this one affidavit created a material issue of fact as to whether the McLeods had acted with an intent to defraud McIntyre.
The only evidence McIntyre offered to support his claim that the McLeods had intended to defraud him was Givens’s affidavit regarding the McLeods’ past dealing with him. Givens’s affidavit refers to an incident that took place 10 years before the dealings that are the subject of this action. The McLeods had retained the services of Givens for the purpose of drafting renovation plans for the Gift Horse Restaurant in Foley, which the McLeods intended to, and subsequently did, open. Givens said he did not recall discussing with the McLeods how much the drawings were to cost, or whether progress payment requests were made. After completion of the design, and well into the renovations, Givens submitted an invoice for approximately $8,000. The McLeods contacted Givens to discuss the amount of the bill. The McLeods claimed that after two or three telephone conversations between the McLeods and Givens, Givens told them to pay what they thought the work was worth. The McLeods submitted to Givens a check for $4,000, as payment in full; Givens accepted it.
Givens stated in his affidavit that he decided against suing for the additional $4,000 because of the cost of litigation and because the Givens’s business was a young growing business in a limited market. After having made the affidavit, Givens testified by deposition that, on numerous occasions, he did utilize the courts to collect debts owed to his company, but that he never sued the McLeods. Givens also testified in his deposition that he had no evidence that the McLeods had engaged in any pattern or practice of committing fraud. Givens further testified that in their community the McLeods had a reputation for being honest.
McIntyre asked Donald C. Wood to prepare an affidavit regarding his experience with the McLeods concerning the renovation work he ..performed on the Gift Horse Restaurant. Wood was the contractor. Unknown to Wood, before filing Wood’s affidavit, which McIntyre filed for the purpose of opposing the McLeods’ motion for summary judgment, McIntyre falsified it so that it would fit better with his theory of fraud. Specifically, after Wood signed the affidavit, McIntyre whited out any reference in it to the fact that Wood had received payment in full for his services. This affidavit was filed in the Lee County Circuit Court on February 7,1995. On February 18,1995, the McLeods took the deposition of Wood, and it became apparent in this deposition that the affidavit previously submitted in this matter had been falsified and that the falsification had been done without Wood’s knowledge. Wood further testified that he never felt that the McLeods were lying to him or trying to trick him, that he had no evidence that the McLeods had in any way defrauded McIntyre, and that in their community the McLeods had a reputation for being honest. Wood finally testified that, were he still in the building business, he would undertake another project for the McLeods and would have no fear that they would not pay him. Upon discovering the falsification of Wood’s affidavit, the McLeods filed a motion with the trial court requesting sanctions.
McIntyre offered no evidence that the McLeods had an intent to deceive. Givens’s affidavit relates to events too remote from the events on which McIntyre’s claim is based, and it provides no evidence of any fraudulent intent by the McLeods.
In its opinion, the Court of Civil Appeals quoted this statement from Roberson v. Ammons, 477 So.2d 957 (Ala.1985), in support of its holding that Givens’s affidavit was sufficient to defeat the McLeods’ summary judgment motion:
“Generally, evidence of past dealing of a party with nonparties is excluded as irrelevant; however, when intent of the party is at issue, that party’s prior conduct and acts on other occasions which have a bearing upon that party’s intent in a subsequent action are competent evidence.”
477 So.2d at 962. See McIntyre v. McLeod, 678 So.2d at 1107.
However, Roberson involved a “prior federal court order enjoining the defendants *1110 from making sales or loans without compliance with the Alabama Small Loan Act, Mini-Code, and Federal Truth-in-Lending provisions,” and “[t]he injunction arose from the sales and loan activities of the defendants with customers of their used car sales lot.” 477 So.2d at 962. In Roberson, the past dealing involved actions by the defendant in regard to which the defendants knew they were violating the law. In Roberson, it is not difficult to see the relevance of that federal court order to the issue of intent. However, in this case, the trial court examined the affidavit and found that it offered no evidence of fraudulent intent on the part of the McLeods.
The Court of Civil Appeals also quoted, in support of its judgment reversing the summary judgment in favor of the defendants, African Methodist Episcopal Church v. St. Paul Methodist Church of Selmont, 295 Ala. 343, 346, 329 So.2d 542, 543 (1976): “ ‘As a general proposition, summary judgment, when issues of motive, intent, and other subjective feelings and reactions are material, is likely to be inappropriate.’ ” African Methodist Episcopal Church did not involve fraud. It involved the African Methodist Episcopal Church in the United States of America, a national religious organization, and St. Paul African Methodist Episcopal Church, Selma, Alabama, an unincorporated local congregation affiliated with the national organization. Both sued St. Paul Methodist Church of Sel-mont, “an incorporated local congregation which was organized on June 12, 1969, when a majority of the local congregation disaffiliated from the national organization.” 295 Ala. at 344, 329 So.2d at 542.
The dispute in African Methodist Episcopal Church arose from the wording of the conveyance of the lot upon which the church building stood. In 1955, the United States Government had conveyed its interest in the lot to the trustees of the “St. Paul African Methodist Episcopal Church, Selma, Alabama.” The habendum clauses contained the following language:
“To have and to hold, ... forever in trust, for the use of the members of the African Methodist Episcopal Church in the United States of America, according to the rule and discipline of said Church, which from time to time may be adopted and agreed upon by the ministers and preachers of said Church at their General Conference in the United States of America.”
295 Ala. at 345, 329 So.2d at 544. This Court reversed the trial court’s summary judgment in favor of the defendant, holding that the language of the deed created a question of material fact as to whether the conveyance intended that the local church was to obtain the lot free and clear of any interest of the national organization. The intent, as recorded in the deed, was the key element of the case. The language of the deed was ambiguous. Therefore, the trial court inappropriately entered the summary judgment. If the deed had been clear on its face, it is likely that the summary judgment would have been held appropriate.
McIntyre presented no evidence of a fraudulent intent on the part of the McLeods. Therefore, the summary judgment for the McLeods was appropriate. I would grant the McLeods’ petition for certiorari review, and I would reverse the judgment of the Court of Civil Appeals.
MADDOX and HOUSTON, JJ., concur.